## Pennsylvania Department of Labor and Industry v. Yodis

*Morley W. Baker*, Assistant Attorney General, for Commonwealth.

*Robert H. Maurer* and *W. J. Krencewicz*, for defendant.

BOWMAN, J., May 18, 1964.—This matter is before the court on defendant's preliminary objections in the nature of a demurrer to a complaint in assumpsit by the Department of Labor and Industry of the Commonwealth seeking refund of certain unemployment compensation benefits allegedly erroneously paid to defendant *by reason of his fault.*

On such a demurrer defendant admits all relevant facts sufficiently pleaded in the complaint and all inferences fairly deducible therefrom. Moreover, when sustaining defendant's preliminary objections will result in dismissal of plaintiff's suit, they should be sustained only in cases which are clear and free from doubt.[1]

Approaching this matter in light of these well settled principles, plaintiff's complaint, after identifying the parties, avers in paragraph 2 that defendant as an employe within the meaning of the Unemployment

[1] Pennsylvania Water & Power Co. v. Garver, 17 D. & C. 2d 341, 72 Dauph. 212 (1958) and cases cited therein.

Compensation Law filed certain weekly claims for unemployment compensation benefits at a local office of the Bureau of Employment Security *representing that he was totally unemployed* and was otherwise eligible to receive such payments. Paragraph 3 avers various times during the year 1959 by identifying specific claim weeks, dates and amounts of checks by which defendant received unemployment benefit payments in the total amount of $448.

In paragraph 4 of the complaint plaintiff avers that subsequent to the payments of the specified benefits the Bureau of Employment Security made a determination that the claims upon which the payments were made were invalid and that defendant was not entitled to receive such payments, that written notice of this determination and reasons therefor were forwarded to defendant on August 17, 1959, that defendant failed to appeal this determination within the time limit prescribed by law said determination thereby becoming final on August 27, 1959. A copy of the written notice of determination given defendant is attached to the complaint as Exhibit A and sets forth the following

"Notice Of Determination

"Finding of Fact and Determination:

"The claimant had been employed by Locust Creek Coal Company, Shenandoah, Pa., until 5-28-59 at which time the company ceased operations. Prior to that date the claimant was unemployed at various intervals due to lack of work.

"In June, 1958, the claimant and his daughter, opened a cafe located at 40 East Centre St., Shenandoah, Pa., known as 'Yodis Cafe'. Claimant's name appears on the liquor license. He performs various jobs in the operation of the business such as waiting on customers, making purchases and cleaning up. The claimand reported income from this business on his income tax return for 1958.

"The claimant is in business; he is self-employed and therefore he is not considered unemployed within the meaning of section 401-4u-4w of the Pennsylvania Unemployment Compensation Law whether he derives a profit or not.

"The claimant is ineligible for benefits and the application is also invalid."

The complaint further avers in paragraph 5 that on December 17, 1959, the Bureau of Employment Security notified defendant by letter (Exhibit B of complaint) that a "fault" overpayment within the meaning of section 804(a) of the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended, had been established against him in the amount of $448, and identified the weeks during which he had received such "fault" payments as the same weeks for which he had been previously notified as having been ineligible for such benefits. Concluding paragraphs of the complaint aver repeated demands for repayment and defendant's failure and refusal to pay.

In his objections defendant contends that the department's complaint does not state a good cause of action in that:

"(a) It fails to allege that the monies sought to be recovered were paid out through the fault of the claimant, that is, that there was a fault payment.

"(b) The pleadings do not comply with the requirements of the Act of 1953, August 24, P. L. 1397, sec. 5, as amended by the Act of 1955, March 30, P. L. 6, No. 5, sec. 9."

If defendant's first objection involved only a question of pleading as to the sufficiency of the complaint, we could easily and properly dismiss the objection as the complaint does sufficiently *aver* a fault payment of unemployment compensation benefits having been made to defendant. As will be developed, however, the basic issue is not limited to a simple matter of pleading.

Section 804 of the Unemployment Compensation Law,[2] relating to recovery and recoupment of compensation benefit payments, in pertinent part provides:

"(a) Any person who *by reason of his fault* has received any sum as compensation under this act to which he was not entitled shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by him. Such sum shall be collectible (1) in the manner provided . . . in this act for the collection of past due contributions, or (2) by deduction from any future compensation payable to the claimant under this act: . . .

"(b) Any person who *other than by reason of his fault* has received with respect to a benefit year any sum as compensation under this act to which he was not entitled shall not be liable to repay such sum but shall be liable to have such sum deducted from any future compensation payable to him with respect to such benefit year, or the three-year period immediately following such benefit year: . . .

"The claimant and other affected parties shall be notified in writing of the department's determination to deduct any sum from future compensation under this section, and such determination shall be subject to appeal in the manner provided in this act for appeals from determinations of compensation." (Italics supplied)

Illegally received unemployment compensation benefits within the provisions of section 804(a) are usually characterized as *fault payments* while those within section 804(b) are characterized as *nonfault payments*.

The first case of this court interpreting this section of the act was Department of Labor and Industry v.

_____
[2] Act of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §874.

Stein, 68 Dauph. 240 (1955), in which the court stated (pp. 241, 242) :

"Past due contributions may be collected by civil action in the name of the Commonwealth; Sec. 309 of Act, 43 P.S. 789. Therefore, 'fault' payments may be recovered by civil action. Non-fault payments may not, but may be recovered by future withholding only; Sec. 804(b). *Therefore, the sine qua non to bringing the suit is a finding that there was a fault payment. There is no such finding in the present case.* The most that was found was that the applications were invalid. The Board has the responsibility of making a finding of 'fault' payment in the first instance. In fact they have done so in some cases, namely, Decision No. B-8649, and Decision No. B-7586-A. Their ruling is subject to appeal to the Superior Court; Sec. 510 of Act; 43 P.S. 830. A decision of the Board unappealed from, or a ruling by the Superior Court is conclusive. *The Common Pleas Court in which an action is brought to recover payments, is, in our opinion, without jurisdiction to determine whether or not a payment is a 'fault' payment. The act puts jurisdiction in the various instrumentalities of the Board and in the Superior Court.* Were it not so, innumerable suits might be brought and dismissed because no fault payment was established. It must be remembered that this is not an appeal from the action taken by the Board. We have no power in a case such as this to review the action taken. But when the fact of 'fault' payment has been established conclusively, as we have above outlined, then we may entertain an action in assumpsit." (Italics supplied)

As we understand it, defendant's reasoning in support of his first objection is:

(a) that the Stein decision, supra, requires a prior administrative finding of fault payment within the provisions of 804(a) which would be appealable through the procedures otherwise provided in the act for determination of compensation payments.

(b) that the nature of determination of August 17, 1959 (Exhibit A of complaint) wherein he was advised that the claims upon which the payments in question were made to him were invalid, and from which he admittedly did not exercise his right of appeal, did not constitute an administrative determination of *fault payment* as distinguished from a *nonfault payment.*

(c) that such notice of determination while admittedly forming a basis upon which the contested payments might be set off against any future benefits payable to defendant under the provisions of section 804 (b), it is not such a determination of *fault payment* as would form the basis upon which an appeal could be taken on this question.

(d) that the letter of December 17, 1959 directed to him by the bureau (Exhibit B of complaint) to the effect that he was ineligible for unemployment compensation benefits for the weeks in question because he was not totally unemployed and advising him that a *fault overpayment* was thus established against him and in which there was no notice of any right of appeal does not constitute an administrative decision from which an appeal might be taken.

Thus, defendant concludes that the complaint fails to state a good cause of action, and points out that to hold otherwise would place defendant in a position of being precluded under the Stein decision from raising a defense as to the nonfault or fault nature of the payments in question in this action while at the same time being precluded from any administrative appeal and ultimate appeal to the Superior Court under the appeal procedure prescribed by the act.

Plaintiff in answering this contention of defendant merely cites our decision in Department of Labor and Industry v. Pisani, 79 Dauph. 69 (1962), as controlling in the disposition of this case. We do not think so. While the complaint filed in the Pisani case is strikingly similar to the complaint here in question, the

issues raised were materially different. In that case this court concluded that a notice of fault determination issued by the director of the said employment office constituted notice of that fact by the Bureau of Employment Security and that, the bureau being an integral part of the Department of Labor and Industry, such fault determination was properly made. The second contention in the Pisani case was that the fault payment determination having been made almost three years after the original notice of determination of ineligibility was ineffective. This was rejected and it was held that a determination of fault constituted a valid determination. The issue raised in this case was not raised or considered by this court in the Pisani decision.

Hence, we have for disposition here the question of whether or not a fault determination has been made by the bureau, and if so whether defendant is afforded any statutory appeal procedure to contest such a finding. As to this latter point, our decision in the Stein case necessarily concludes that such a statutory appeal procedure and review by the Superior Court does exist, as noted in the foregoing quoted portion of our decision in that case.

There would seem to be little question that the notice of determination given by the bureau to the defendant on August 17, 1959 (Exhibit A of complaint) does not constitute a finding or determination of fault payment. The most that was found was that the applications upon which the contested unemployment compensation payments were made were invalid and that the claimant was, therefore, ineligible for such benefits. Nowhere in said determination is it suggested that these payments were *fault payments* as distinguished from *nonfault payments*.

We must, therefore, next turn to the letter of the Bureau of Employment Security dated December 17, 1959 (Exhibit B of complaint) wherein defendant was

advised that the payments in question were fault payments. This letter after identifying the weeks in question for which defendant had been previously found to have been ineligible because "(he was) not totally unemployed" then clearly advised defendant that a "fault overpayment" had been established against him with respect to benefits paid to him for the identified weeks. Hence, it is clear that defendant was advised that a finding *of fault overpayment* had been made against him. It should be further noted, however, that this letter gave no notice to the defendant of any right of appeal which he may have enjoyed with respect to such a determination.

We thus come to the second question of whether the determination made by the bureau of a *fault overpayment*, and of which determination defendant was notified by the aforementioned letter, constitutes a "decision" from which defendant would then be entitled to invoke the administrative appeal procedures of the Unemployment Compensation Law and an ultimate right of appeal to the Superior Court.

As noted in our decision in the Stein case, we concluded that an individual had a right of appeal to the Superior Court from an administrative determination of a fault payment wherein we cited section 510 of the act, 43 PS §830.

This section provides in pertinent part as follows:

"An appeal to the Superior Court may be taken by the department or by any party claiming to be aggrieved, but only after such appellant has exhausted its remedies before the board."

Since this statutory provision conditions the right of appeal to the Superior Court only after a party has exhausted his remedies before the board, further inquiry must be made as to defendant's rights to an administrative appeal of the *fault payment* determination by the bureau. For the answer to this we must

first look to the provisions of section 509 of said act, 43 PS §829, which provides as follows:

*"Any decision* made by the department or any referee or the board shall become final ten days after the date thereof, . . . , unless appealed from, *as hereinbefore provided;* but any decision of the board or of a referee, where an appeal has been disallowed by the board, shall nevertheless be subject to appeal to the Superior Court after the same has become final.

"Subject to appeal proceedings and judicial review as provided in this act, any right, fact or matter in issue which was directly passed upon or necessarily involved in any decision of a referee or the board or the Superior Court and which has become final shall be conclusive for all purposes of this act and shall not be subject to collateral attack as among all affected parties who had notice of such decision: . . . ." (Italics supplied)

At first blush the phrase "any decision" would appear to be all inclusive and lead one to the conclusion that any and all determinations made by the department, or referee or the board on any and all subjects within the scope of the Unemployment Compensation Law would also be within the scope of this section, and hence subject to what is commonly referred to as the administrative determination and appeal provisions of the act encompassed within article V.

That such a first impression is erroneous, however, becomes evident by examination of other sections of the act. In the matter of employer contributions, for example, separate and distinct procedures are set forth for the determination of deficiencies and the procedures for appeal therefrom.[3] It is evident, therefore, that the phrase "any decision" as contained in section 509 means something less encompassing than any and

---

[3] Section 304 of the act, 43 PS §784.

all determinations which the act empowers the department or referee or the board to make.

We thus come to the very narrow question of whether the aforesaid *fault payment* determination made by the bureau is a "decision" within the meaning and intent of section 509 of said act. If it was such a "decision" we must conclude that defendant, having been notified thereof and having failed to appeal therefrom within the ten day limit, is now precluded under our decision in the Stein case from raising this issue here. Therefore, his objection would have to be dismissed. On the other hand, if said determination was not a "decision" within the meaning of section 509, we must overrule the Stein decision to the extent that it so holds, but nevertheless dismiss defendant's first objection for the reason that the complaint sufficiently avers a fault payment, and permit the issue of the fault or nonfault nature of the payment to be resolved at trial, if properly placed in issue.

Section 509 is one of eleven sections contained in article V of the act, which article is headed "DETERMINATION OF COMPENSATION; APPEALS; REVIEWS; PROCEDURES." While headings to articles contained in a statute are not to be considered as controlling, they may, nevertheless, be used as an aid in construction thereof: section 54, Statutory Construction Act of May 28, 1937, P. L. 1019. With this limited value in solution of the problem, the article heading suggests to the reader that the scope of its subject matter is limited to the administrative determination of eligibility for and the amount of unemployment compensation benefit payments and the procedures for review and appeal of this particular kind of determination.

Section 501, the first section of article V, which is captioned "Determination of compensation appeals," first directs the department to examine each application for benefits, and then goes on to provide for the de-

partmental determination of eligibility for *benefits,*
the sundry notices to be given incident to this partic-
ular type of determination and of revisions of deter-
mination of eligibility for benefits. Thus, the provisions
of this section fix the scope of the subject matter of de-
partmental determinations to be those relating to eligi-
bility in the first instance of applicants for unemploy-
ment compensation benefits and subsequent revisions
of this particular type of determination.

Section 502, which is captioned "Decision of referee;
further appeals and reviews," provides that where an
appeal from the determination or revised determina-
tion, as the case may be, of the department is taken,
the referee shall undertake to conduct hearings and
give notification of his decision. It further provides
that upon failure to appeal from such a decision it shall
be considered to be final. Hence, reading these two sec-
tions together, it becomes even more evident that the
entire article, including the provisions of section 509,
is limited in the scope of its subject matter to deter-
minations of eligibility for unemployment compensa-
tion benefits and revisions of such determinations.

Subsequent sections of article V,[4] including section
509, contain no language which would suggest that
the scope of the subject matter of said sections, or any
one of them, is any broader than the subject matter of
the article as suggested by the article heading and as
provided for in section 501. We, therefore, conclude
that the phrase "any decision" as employed in section
509 must be construed to mean and be limited in its
application to determinations by the department, ref-
eree or board of eligibility for unemployment compen-
sation benefits and revisions of such determinations;
and that it cannot be construed to encompass other
administrative determinations *unless* any such other
determination is specifically directed by other statu-

---

[4] Sections 503-512 inc., 43 PS §§823-832.

tory provision to be made subject to these appeal and review procedures.

Reverting to section 804, supra, the third paragraph of this section *specifically* provides that "the claimant and other affected parties shall be notified in writing of the department's determination to deduct any sum from future compensation under this section, and such determination shall be subject to appeal in the manner provided in this act for appeals from determinations of compensation."

It is clear that this section *specifically* invokes the appeal and review procedures of the act (article V) in those cases where the department determines to set off illegally received benefit payments against future compensation—being one of two enforcement procedures it may invoke as to fault payments and the only one it may invoke to enforce recovery of nonfault payments. It is equally clear, however, that this section is completely silent as to the procedure to be employed by the department in making a determination of fault payment to be enforced by collection, or as to the rights of the individual to have such a determination reviewed.

The provisions of section 804, therefore, produce the rather unusual result of affording by reference to article V, appeal and review procedures from administrative determinations to enforce recoupment of *both* fault and nonfault payments by way of setoff against future compensation while being completely silent with respect to administrative determinations of fault payments which the department proposes to collect through initiation of an action in assumpsit, which right of action is specifically given to the department by other provisions of the section.

We are of the opinion, however, that while the unusual result set forth does obtain, it is not so absurd or ridiculous as to impel us to ignore what we believe to be a proper construction to be placed upon the language employed by the legislature in the several sec-

tions of the act discussed above. To hold otherwise would be to say that the legislature intended to say something that it did not say and do so in the guise that an absurd or ridiculous result not intended by the legislature would otherwise result.

If such an unusual result needs remedy, the remedy lies with the legislature and not through the labored application of general rules of statutory construction which—while being of aid in resolving some issue of legislative intent—more often than not are applied to support a conclusion already reached rather than as steps in the reasoning process leading to a conclusion.

We, therefore, further conclude that an administrative determination of fault payment in those cases where it is not intended to enforce recoupment thereof by way of setoff against future compensation are not "decisions" within the scope of section 509 of the act from which determination defendant has a right of appeal and review. To the extent that our decision in Department of Labor and Industry v. Stein, supra, so holds, we, therefore overrule the same.

In the Stein decision this court, in concluding that it lacked jurisdiction to entertain the issue of the fault or nonfault nature of the benefit payments in question, supported its conclusion at least in part upon the fact that the board in two cited board decisions had itself made determinations of fault payments, thus evidencing board recognition of the conclusion reached by the court. In this respect we said (p. 241):

"The Board has the responsibility of making a finding of 'fault' payment in the first instance. In fact they have done so in some cases, namely, Decision No. B-8649 and Decision B-7586-A. Their ruling is subject to appeal to the Superior Court. . . ."

A review of these board decisions, however, reveals that they were not determinations of *fault payment* but rather determinations that recoupment of *nonfault payments* from future compensation would not have

been *inequitable or unconscionable,* a determination required to be made by the board under the then existing provisions of Section 804 of the act (as amended through 1951) as a condition precedent to setting off such payments against future benefits. At the time the Stein case was before this court, subsequent amendments to section 804 had deleted this requirement on the part of the board.[5]

Under these circumstances, it cannot be said that these board decisions support the court's conclusion in the Stein case, and assuming arguendo, that they did, it does not answer the narrow issue of whether such a determination is a "decision" which is within the administrative appeal and judicial review provisions of article V of the act.

It might be well to further note that section 804, supra, provides that fault payments may be collected "in the manner provided in this act for the collection of past due contributions." Past due contributions of employers are collectible under the act pursuant to the provisions of section 309 which provides that the department may collect by civil action any such past due employer contributions if it has failed to collect the same after notice to the employer of such delinquency. Neither this section nor section 304, which prescribes procedures for employer reports and assessments for deficiencies by the department, in any of their provisions cross reference such determinations to section 509 of the act, or suggest that assessment determinations by the department pertaining to employers' contributions are subject to the appeal and review provisions of article V. On the contrary, with respect to departmental determinations of deficiencies of employer contributions, as noted above, section 304 establishes a procedure for notification to the employer of

---

[5] Act of August 24, 1953, P. L. 1397, and Act of March 30, 1955, P. L. 6.

such determinations and appeals therefrom to the Court of Common Pleas of Dauphin County, and hence specifically bypasses the administrative appeal and judicial review provisions of article V.

Giving consideration to all the provisions of the act that could possibly pertain to the narrow issue before us, we believe our conclusion as above stated to be correct.

While holding that this court has jurisdiction to determine the fault or nonfault nature of benefit payments received by a defendant in an assumpsit action brought by the department to recover such payments, this conclusion should not be construed to imply that in any such case this court will allow at the trial a collateral attack upon the findings of fact made by the department in its *determination of ineligibility* from which a right of appeal does exist. The administrative determination and appeal provisions of the act as noted above with respect to this particular type of determination are exclusive and thus they are not subject to collateral attack as specifically so provided in section 509, supra, and this court is without jurisdiction to review such a determination: Commonwealth v. Lentz, 353 Pa. 98 (1945); Commonwealth v. Phoenix Iron Co., 62 Dauph. 77 (1951).

In light of our conclusion, it is not necessary to specifically pass upon defendant's second preliminary objection. We have previously discussed these amendatory acts in this opinion, and they do not appear to have any direct bearing on the issue raised by defendant beyond that already referred to.

For the foregoing reasons, we make the following

ORDER

And now, May 18, 1964, defendant's preliminary objections are overruled and defendant is directed to answer the complaint or otherwise plead within 20 days of receipt of this order.